[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action brought by the Commissioner of Environmental Protection against numerous defendants. It concerns a 109-acre rock, sand, and gravel mine located in Brookfield, Connecticut, which has been owned and operated by the various defendants over a period of several years. The complaint dated November 22, 1993 concerns the alleged violations by the defendants of certain statutes respecting the environment. Prior to trial the Commissioner, by way of settlement, withdrew the action filed against all the named defendants except Kenneth Kovacs individually.
Defendant Kovacs owned and operated the mine from 1983 until December 23, 1987 under the name Fairfield Resources, Inc., one of the other named defendants. Kovacs was the sole shareholder in said corporation and had acquired the quarry from his father's estate. Although the Commissioner has settled its cases against CT Page 885 defendant, Fairfield Resources, Inc., it has continued this action against Kenneth Kovacs individually. Thus, a trial to the court was held as to him on October 16, 21, and 22, 1997. On October 15, 1997 the court personally viewed the property located in Brookfield.
The complaint dated November 22, 1993 was brought in twelve counts. However, at trial the Commissioner asserted allegations against Kovacs individually on only seven counts (II, III, IV, VIII, X, XI, XII). Count I has not been considered by the court because there is no allegation in the complaint against Kovacs individually in that count. Also after trial the Commissioner withdrew its claims under counts III, XI and XII. Thus, this decision concerns counts II, IV, VIII and X only.
Counts II and IV. In count II plaintiff alleges that on or about 1986 or 1987 defendant Kovacs (and/or defendant Fairfield Resources, Inc.) constructed a dam across a brook called Limekiln Brook without a permit in violation of General Statutes §22a-403 (a). In count IV plaintiff alleges that defendant Kovacs during the time he owned and operated the mine, maintained the dam without a permit. In this regard, plaintiff claims that Kovacs constructed without a permit and maintained the dam for 94 days from at least January 1, 1987 through April 4, 1987, for a statutory maximum penalty of $47,000.
General Statutes § 22a-407, in effect during 1987 provides in pertinent part as follows:
 "Any person . . . building . . . maintaining or using any such structure without complying with the provisions of this chapter . . . shall forfeit to the state a sum not exceeding five hundred dollars, to be fixed by the court, for each offense. Each violation shall be a separate and distinct offense and, in the case of continuing violation, each day's continuance thereof shall be deemed to be a separate and distinct offense . . ."
The term "such structure" as used in said statute includes the following terms as set forth in Connecticut General Statutes § 22a-401 which provides:
 "All dams, dikes, reservoirs and other similar structure, with their appurtenance, without CT Page 886 exception and without further definition or enumeration herein, which, by breaking away or otherwise, might endanger life or property, shall be subject to the jurisdiction conferred by this chapter."
According to § 22a-409-1 (a)(7) of the Regulations of Connecticut State Agencies a "dam" is defined as "any barrier ofany kind whatsoever which is capable of impounding or controllingthe flow of water."
The issue before the court, then, is whether Kovacs constructed and maintained a dam which "by breaking away or otherwise might endanger life or property." If so, such dam would be subject to the jurisdiction of Chapter 446j of the Connecticut General Statutes, and Kovacs would have been required to obtain a permit for such construction. The court finds that Kovacs did in fact build a "dam" as defined by the regulations of Connecticut state agencies. However, the court finds no reason to penalize him for doing so.
The evidence showed that in 1985 Fairfield Resources, Inc., had applied for a permit from the DEP to allow water to be pumped from the floor of the quarry pit to the Likekiln Brook. Part of the permitting process required water samples to be taken from the brook. Because the brook was seasonal and went dry during the summer months, defendant Kovacs (or one of his corporations) constructed a structure across the streambed of the brook. The purpose of the structure was to slow down the flow of the brook to allow the collection of water samples during the dry season. A four-inch layer of large crushed stone was laid down on the bed of the brook. On this stone, three 18-inch pipes were laid in the direction of the flow of the brook. Over and around the pipe additional crushed stone was placed. On the westerly side of the brook a V-shaped sluiceway of large crushed stone was built. The structure slowed down the flow of water up to a water level of four inches. If the water level rose above four inches it would pass through the pipes or pass through the sluiceway. Water below the four-inch level would slowly percolate through the large crushed stone and continue its flow in the brook.
The court finds that, although the structure was by definition a "dam", the plaintiff has failed to show that the structure "by breaking away or otherwise might endanger life or property." Accordingly, the building of the structure did not CT Page 887 require obtaining a permit.
Count VIII. In count VIII plaintiff alleges that defendant Kovacs has since April 1987, during the time he owned and or operated the mine, been diverting the waters of the state without a permit. According to the plaintiff, the maximum penalty by statute is $1,000 per day for 261 days (April 5, 1987 through December 22, 1987 or $261,000 [§ 22a-368b}]).
The claim, according to the plaintiffs brief appears to be that on April 4, 1987 after Mr. Kovacs constructed the dam (referred to in counts II and IV), the Limekiln Brook breached its banks and caved into the mine, and that thereafter Kovacs started pumping one million or more gallons of water per day from the mine pit. Plaintiff states in its brief: "It is thus clear that the cave-in created a 200,000-gallon per day diversion into the mine, and the accompanying pumping of water by Mr. Kovacs out of the mine." While it is true that the Limekiln Brook breached its banks and caved into the mine, the court does not believe that such event occurred because Mr. Kovacs constructed the "dam". There had been an unusual storm lasting for several days which the court finds was the cause of the cave-in.
Furthermore, although in count III plaintiff alleged that the construction of the dam caused a diversion of the waters of the state, it withdrew this claim in its brief. Thus, there is no claim that the construction of the dam caused the water to divert into or out of the mine.
The issue, then, is whether the pumping of water out of the mine as a result of the cave-in in and of itself violated Connecticut General Statute § 22a-368 (b). That statute provides:
 ". . .(n)o person or municipality shall, after July 1, 1982, commence to divert water from the waters of the state without first obtaining a permit for such diversion from the commissioner."
Count VIII of the complaint incorporates by reference the allegations of paragraphs 93 and 94 found in count VI. These paragraphs allege that on or about April 1987 Kovacs (and other defendants) excavated the stream bed of Limekiln Brook and that such excavation caused a diversion of the waters of the state. The court notes, however, that the plaintiff withdrew count VI of CT Page 888 the complaint as to Kovacs. Thus it is not clear from count VIII of the complaint what the claimed diversion was. Clearly, there is nothing anywhere in the complaint that alleges that pumping the water out of the mine after the cave-in in and of itself constituted a diversion of the waters of the state. The only counts of the complaint (other than count VIII) alleging a diversion are found in count I (which alleges nothing against Kovacs), and counts III, V, VI, VII, and IX, all of which have been withdrawn as against Kovacs.
The court also notes that plaintiff's Exhibit 7 paragraph 15 dated September 24, 1987, provides:
 "Should a storm event cause a breach of Limekiln Brook within the permittee's property, the permittee shall restore the brook to its original channel in a manner approved by the Water Resources Unit."
Defendant apparently attempted to restore the brook by pumping the water from the mine floor to the original channel bed at the duck pond. Since DEP approval was required, Fairfield Resources, Inc., sought such approval in its letters dated August 26, 1987 (Plaintiffs Exhibit 8) and November 9, 1987 (Defendant's Exhibit D). However, Kovacs received no enforcement letter from the DEP in this regard until after December 22, 1987 when he no longer owned the mine. The court finds that the plaintiff has failed to prove its allegations set forth in count VIII.
Count X. In count X plaintiff alleges that since January 1987 defendant Kovacs has, during the time he owned and or operated the mine, carried on, conducted and maintained a regulated activity, to wit, the operation of a mine, without a permit from the Brookfield Inland Wetlands Commission. According to the plaintiff, the maximum penalty by statute is $1,000 per day for 356 days (January 1, 1987 — through December 22, 1987) or $356,000. (See General Statutes § 22a-42a(c), § 220-10 of the code of the Town of Brookfield (1982) and § 220-7 of the code of the Town of Brookfield (1991)).
The quarry was operated by defendant's father from the 1950's during which period part of the operation consisted of pumping ground water from the mine floor. In 1981 and 1982 the Brookfield Inland Wetlands Commission ("BIWC") found that the quarry operation was a preexisting activity exempt from its regulations CT Page 889 pursuant to § 220-4 of its regulations. (See defendant's Exhibits E, F, K, L, M) Furthermore, the BIWC was aware of the pumping operation and approved of it (defendant's Exhibit I). In light of the fact that BWIC was aware of the operations taking place at the quarry and saw no reason to require an additional permit, Kovacs relied on BWIC's findings justifiably. Under the circumstances, the court believes it would be inappropriate to assess a penalty against Kovacs even if, as alleged by the plaintiff, he should have obtained a permit from BWIC.
In summary, the court finds that the plaintiff has failed to prove its allegations against Kovacs individually as alleged in counts II, IV, VIII, and X. Accordingly, judgment may enter for said defendant on all counts.
Allen, Judge Trial Referee